469 So.2d 270 (1985)
Willie BURLEIGH, et ux, Plaintiffs-Appellants,
v.
STATE FARM INSURANCE, et al., Defendant-Appellee.
No. 84-471.
Court of Appeal of Louisiana, Third Circuit.
May 15, 1985.
*272 David L. Carriere, Opelousas, for plaintiffs-appellants.
William J. Ziegler, Jr., and David Kaufman, Allen, Gooch, Bourgeois, Breaux & Robison, P.C., Frank A. Flynn, Lafayette, for defendant-appellee.
Before STOKER, LABORDE and KING, JJ.
STOKER, Judge.
Plaintiffs, Willie and Emmaline Burleigh, bring this action for damages for injuries arising out of a rear-end collision that occurred on June 3, 1981. The accident occurred when a piece of air-conditioning duct fell out of the back of a vehicle owned and operated by Joseph C. Stevens and onto plaintiffs' vehicle, which was then struck from the rear by a vehicle driven by Beulah M. Stanbury and owned by James R. Mire. Defendants in this matter include Continental Insurance Company, Stevens' insurer, and State Farm Mutual Automobile Insurance Company, Mire's insurer. On trial of the matter eight months after the accident, a jury found the plaintiffs' whiplash-type injuries were caused by the joint negligence of Mire and Stanbury and awarded Willie Burleigh $5,000 and Emmaline Burleigh $7,000.
On February 22, 1982, the same day that judgment on the jury verdict was signed, plaintiffs filed a motion for new trial under LSA-C.C.P. art. 1972(1), contending the awards were inadequate. The motion for new trial was heard on March 29, 1982, and taken under advisement. On July 2, 1982, the trial court issued written reasons wherein he stated he believed the awards were inadequate, denied the new trial and directed defendants to prepare a judgment denying the new trial. Defendants did not prepare a judgment denying the new trial. In this posture the matter came to this Court on appeal. We dismissed this appeal as untimely filed as found at 453 So.2d 321. Without giving reasons for its action the Louisiana Supreme Court granted a writ application and ordered reinstatement of the appeal. 458 So.2d 931 (La.1983). We have now considered the appeal and we remand this case to the trial court for a decision consistent with the expressions in the opinion which follows.
The sole questions considered here are whether or not the trial court erred as a matter of law in denying plaintiffs' motion for new trial under LSA-C.C.P. art. 1972(1) or in failing to avail itself of the additur procedure authorized by LSA-C.C.P. art. 1814 (formerly 1813). On February 22, 1982, plaintiffs timely filed a motion for new trial under C.C.P. 1972(1), contending the awards made by the jury were so low as to be contrary to the law and evidence. The motion was heard, taken under advisement and on July 2, 1982, the trial court issued written reasons in which he stated as follows:
"A Jury Trial was held in this case, a tort case, and the Plaintiff husband was awarded $5,000.00 and the Plaintiff Wife was awarded $7,000.00.
"At one time Judge Tate, in attempting to standardize whiplash awards, set up a scale, which set a certain amount for a minor whiplash, a moderate whiplash, and a servere [sic] whiplash. This didn't last any appreciable period of time, because of inflation, because of the variations in individual cases and because of the really subjective evaluation of such damages by the Court and/or the Jury.
"In this case, the undersigned would have awarded more damages, because the injury occurred on June 3, 1981, and at trial on February 2, 1982 credible complaints of pain were still present.
"However, the Court's alternatives are simply a New Trial, or an additur. In *273 either event, the result would be the same: a new trial. Because if the Defendant didn't accept the additur, a new trial would ensue.
"However, what is to be gained by a New Trial at District Court level, with no new evidence to present; or, at least no new evidence not available at the recently held trial? The next Jury may make the same award.
"In a previous situation similar to this, perhaps not on the `damages' question, this Court felt relief, if any was due, should be at Appellate level, as no new evidence was available.
"The Court of Appeals agreed with this and even found Jurisprudence pointing out that this was the best approach. They then reviewed and changed the verdict. Until the District Court is given the power, which is now being proposed, to give Judgment notwithstanding the Verdict, the proper procedure is to have the Appellate Court review this case on the facts, and increase the award if same is warranted.
"The Motion for a New Trial is denied.
"Counsel for the Defendant will prepare the proper Judgment, mail a copy to opposing counsel for approval as to form, in writing, and present the Judgment for signature."
Subsequent to the issuance of the reasons quoted above, motions for reargument and a partial new trial under C.C.P. art. 1972(2) and an Exception of No Cause of Action were filed, taken under advisement, and the trial court again issued written reasons denying this second round of pleadings, as follows, in pertinent part:
"On June 3, 1981, Mr. Burleigh and his wife were `rear-ended'. He went to the hospital that day and a lady doctor gave him medicine, after x-raying him.
"He then saw Dr. Mayer, an Orthopedist, on June 8, 1981, with complaints of pain to his neck, and while wearing a neck brace. He was told to discontinue the neck brace. Dr. Mayer found twenty-five (25%) percent restriction of the neck, and the x-rays were essentially negative. The doctor thought Mr. Burleigh had a soft tissue strain of the neck (no disc, etc.). He recommended heat. Dr. Mayer felt Mr. Burleigh would be sore several weeks or several months, (at most a year or two), and gave him medicine. Dr. Mayer felt there was soft tissue injury.
"Dr. Mayer saw him again on July 13, 1981, at which time he was complaining of neck pain and headaches. He had full motion of his neck. He was told to continue moist heat and told to perform intermittant [sic] traction at home.
"The doctor saw him again on December 22, 1981. He was not on medicine, and was discharged. The doctor told him to check back if there were any further developments, as there was nothing else to do. He was still having some problems. The doctor thought he would recover after a time, with progressive minimizing of pain.
"Mrs. Burleigh had about the same history as Mr. Burleigh. They both worked at the Drive-In Movie. He is 49 (January, 1982). She is 54 (January, 1982). Both complain of continuing pain as of trial date of February 2, 1982.
"Medical and wage loss for both were minimal, and neither saw another doctor after Dr. Mayer.
"The Jury gave him $5,000.00 and the wife $7,000.00.
"On a scale of mild, moderate and severe, it is apparent these people suffered moderate whiplash injuries, at middle age.
"While the evaluation of these injuries is somewhat subjective, the Court felt the awards were low, as previously stated in its Reasons of July 2, 1982.
"Like the Jury, the Court was more impressed with the wife than the husband. It felt the award to the husband and wife should have been double the Jury award. However, as previously stated, an additur, or, a New Trial would only be tried on the same evidence; and, for the previously stated reasons, the Court thinks it should make the Higher Court aware of its thoughts, and as in Riddle v. Menard, *274 355 So.2d 1350, let the Higher Court increase the Judgment if it sees fit.
"The Motion for Reargument is denied."
We have on several occasions been presented with cases in which a court denied a motion for new trial under C.C.P. art. 1972(1) while expressing an opinion similar to the above. In Kaplan v. Missouri-Pacific Railroad Company, et al, 409 So.2d 298 (La.App.3d Cir.1981), writ denied, 411 So.2d 464 (1982), we responded in Footnote 1 at page 302 as follows:
"We know of no statutory or jurisprudential authority allowing a trial judge to deny a motion for a new trial, while in the same breath stating for the record that the jury verdict is contrary to the law and evidence. On the contrary, C.C.P. Article 1972 mandates that a new trial shall be granted "where the judgment appears clearly contrary to the law and the evidence". The "conclusions" of the trial judge in this case might have some validity if he had acted according to law and granted a new trial. In our view, since he failed to follow through on his own conclusions, we, on appeal, attach no significance to these conclusions and will review the case from the viewpoint of the manifest error rule as applied to the jury verdict.
We are aware of the fact that in Riddle v. Menard, 355 So.2d 1350 (La.App. 3 Cir.1978), writ denied, 359 So.2d 627 (La. 1978), we went ahead and considered the case on appeal even though the trial court judge had expressed strong feelings that the judgment was contrary to the law and the evidence, but yet did not grant a new trial.
As in Riddle, the record in this case is complete. However, in considering the appeal rather than reversing the trial court's denial of the motion for a new trial and remanding the case for a new trial, we do not wish to establish a precedent of allowing trial courts under such circumstances to "transfer" a case to this Court of Appeal in the interest of judicial economy, or under some other notion. Article 1972 of the Code of Civil Procedure is mandatory and should be followed by the various trial courts. However, in this particular case, which has been pending since 1972 (for no good reason apparent from the record), which required three weeks to try, and because of the large number of witnesses, expert and lay, involved herein, some of which may now be missing or dead, we will, in the interest of justice, consider the case on the merits. We emphasize, however, that the notion of "in the interest of judicial economy" is not to be equated with the concept of "in the interest of justice". If a trial judge feels, and so states for the record, that the jury verdict is contrary to the law and the evidence, then he must grant, upon proper motion, a new trial (under the clear provisions of C.C.P. Article 1972), having no authority to transfer to, or "allow" a court of appeal to hear a case "in the interest of judicial economy".
Our position stated in Kaplan v. Missouri-Pacific Railroad Company, supra, has not changed. While we emphasize the point that Kaplan and Riddle (cited in the quotation from Kaplan above) do not represent general policy, it is worth noting that in both cases the main issues concerned liability; here the sole issue is quantum. The trial court had available to it the additur device for correcting what it considered as inequity in the awards for quantum. While the ordering of additurs might have resulted in requiring a new trial, the case was certainly different from Kaplan and Riddle.
Thus, we have reached our conclusions here after considering three questions. First, did the trial court feel and so state for the record that the jury verdict was contrary to the law and evidence? Second, if the answer to the first question is yes, did the trial court deny the motion for new trial solely on grounds of judicial economy? Third, are there interests of justice to be served by our considering this case on the merits?
We conclude from the trial judge's written comments that the first question must *275 be answered in the affirmative. Read as a whole the trial judge's thoughts and expressed opinion is explicit enough. We consider appellees' argument that the situation here should be compared to Rossignol v. Rose, 378 So.2d 196 (La.App. 4th Cir.1979), where the court considered a two-paragraph ruling denying plaintiff's motion for additur or new trial and stated as follows:
"In the present case, however, the trial judge's remarks did not amount to a refusal to perform a statutory duty. The judge's remarks might perhaps be construed to indicate he would have granted a higher award, but cannot reasonably be construed to indicate that a new trial should be granted for that reason only."
We disagree with counsel's position. Unlike the court in Rossignol v. Rose, supra, we have more than a few remarks before us. We have two separate opinions, written more than four months apart, after numerous hearings and full consideration of law. In both opinions the trial court stated the awards were low and specifically identified certain evidentiary factors that are pertinent to a quantum evaluation, including the duration of pain, severity of the injury and age of the individual. The court acknowledged the subjective nature of quantum evaluations and the greater credibility of Emmaline over Willie, but the trial court still concluded both awards should have been doubled. We are persuaded that the trial court did feel and intended his words to convey his belief that the jury award was contrary to the law and evidence.
The question of whether the trial court denied the new trial for reasons of judicial economy must also be answered in the affirmative. The trial court was of the erroneous opinion that there was nothing to be gained from granting a new trial without new evidence and that the best thing to do was leave the matter for appellate review. We do not agree.
A new trial based on newly discovered evidence under LSA-C.C.P. art. 1972(2) is a matter separate and apart from the grounds specified in LSA-C.C.P. art. 1972(1). To require that new evidence exist in order to grant a new trial under LSA-C.C.P. art. 1972(1) effectively renders that provision useless.
The trial court also expressed the opinion that application of former LSA-C. C.P. art. 1813, now Article 1814, providing for additur as an alternative to a new trial, would be useless. There is no evidence in the record to support the court's assumption that an additur would have been refused or that additur would not have achieved the desired result of judicial economy. The trial court expatiated on what it considered the limited value of the additur provisions as compared with the power to give judgment notwithstanding the verdict, which was not authorized until the enactment of LSA-C.C.P. art. 1810.1, effective September 10, 1982. We note LSA-C.C.P. art. 1810.1 has been repealed and the provisions formerly contained therein were reenacted as LSA-C.C.P. 1811, amended by Acts 1984, No. 40, Sec. 1, to include paragraph F, which overrules Rougeau v. Commercial Union Insurance Company, et al, 432 So.2d 1162 (La.App.3d Cir.1983), and allows the trial court to grant a judgment notwithstanding the verdict on the issue of damages alone.
The trial court's examination of available alternatives are a further indication that it truly believed the quantum awards were contrary to the law and evidence and that some action was warranted. Instead of exercising the authority entrusted to the court under the mandate of LSA-C.C.P. art. 1972(1), however, the trial court denied the new trial and deferred to this Court's power of appellate review. The objective of judicial economy, alone, will not support such a result.
Finally, we answer the third question in the negative. We do not find the interests of justice will be served by considering this case on the merits. None of the factors supporting our review in Kaplan v. Missouri-Pacific Railroad Company, supra, are present in the instant case. Plaintiffs *276 proceeded to trial without delay. The trial of the matter took only one day and the only significant witnesses were the parties themselves and the medical witness, who need not remain the same. The plaintiffs have repeatedly and insistently sought a new trial, which was improperly denied. Plaintiffs are entitled to a judgment in accordance with the law and evidence; the defendants are not entitled to the benefit of reduced liability because of the jury's failure to make a proper award.
We believe the trial court desired that justice be done by allowing the plaintiffs the opportunity to obtain a fair and adequate award. Under our procedural and substantive law and the circumstances of this case, the trial court was the proper authority to achieve that result. In reviewing quantum awards, an appellate court can disturb an award only where the record indicates that the trier of fact abused its discretion in making the award. Upon finding an abuse of discretion, the award can only be raised (lowered) to the lowest (highest) point which is reasonably within the discretion of the trial court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977) and Emerson v. Empire Fire & Marine Insurance Company, 393 So.2d 691 (La.1981).
Before this Court appellees have urged, despite our position taken as outlined above, that we nevertheless make a value judgment as to the trial judge's opinion that the quantum awards were low. In other words, appellees suggest that just because the trial court, in effect, issued an advisory opinion to this Court that the awards were inadequate, we should independently determine whether that position is correct before we should decide to remand. We believe this is putting the cart before the horse. We believe that the philosophy expressed in Coco v. Winston Industries, Inc., supra, places primary responsibility for fixing quantum at the trial level. We are convinced that the limited role granted to the courts of appeal in quantum review requires that great deference be given to the trial court's evaluation. Moreover, we think that counsel's effort to have us evaluate at this point the general position of the trial court that the awards were low is but an attempt to make a back door entrance for their arguments which we have already rejected.
It is quite proper for a court of appeal to fix the quantum in damage suits in instances where plaintiff's demands based on liability were rejected at trial. A reversal in the court of appeal devolves upon the appellate court the duty of fixing quantum. This is exactly what occurred in Riddle v. Menard, supra.
We will attempt to deal with a final issue raised by appellees. They deny appellants are entitled to any remand for new trial. Alternatively, they strenuously urge that the action of the Louisiana Supreme Court does not entitle appellants to the granting of the second motion for new trial, the motion entitled "Motion for Partial New Trial." Whether this be true or not, we believe that, once a trial has been completed, a worsening of a plaintiff's condition is not newly discovered evidence within the intendment of LSA-C.C.P. art. 1972(2) entitling a claimant to a new trial on that ground alone. Williams v. Liberty Mutual Insurance Company, 327 So.2d 462 (La.App.3d Cir.1976) and Collins v. J.C. Penney Company, Inc., et al, 450 So.2d 1003 (La.App.2d Cir.1984).

CONCLUSION
Upon remand the trial court shall take one of the following actions:
1. Grant a complete new trial under the authority of LSA-C.C.P. art. 1972(1), if it should deem such action appropriate, but if it does not order a complete new trial, it shall
2. Order additurs in such amounts as it deems appropriate under the authority of former Article 1813 of the Louisiana Code of Civil Procedure, now Article 1814.
*277 Accordingly, we remand this case to the trial court for further proceedings consistent with the views expressed herein.
REMANDED WITH INSTRUCTIONS.