540 So.2d 1103 (1989)
DIRECTIONAL WIRELINE SERVICES, INC. and Directional Wireline Equipment Co., Inc.
v.
Ray O. TILLETT.
No. CA 87 1820.
Court of Appeal of Louisiana, First Circuit.
February 28, 1989.
Writ Granted April 21, 1989.
Richard K. Keefe, Metairie, for plaintiff and appellantDirectional Wireline Services, Inc. et al.
Robert Prejeant, Houma, for defendant and appelleeRay O. Tillett.
Before CARTER, LANIER and LeBLANC, JJ.
LANIER, Judge.
This action commenced as a suit in contract by two corporations, Directional Wireline Services, Inc. (DWS) and Directional Wireline Equipment Co., Inc. (DWE) against one of their stockholders, Ray O. Tillett, to compel specific performance of a contract to sell Tillett's shares in the corporations back to the corporations. Tillett (who had also been an employee) filed a reconventional demand against DWS, DWE and two corporate stockholders, Henry R.J. Cournoyer and Darwin A. Miller,[1] cumulating actions in tort and contract for (1) production of all corporate records necessary to calculate the "true book value" of his stock, (2) payment by the corporations to him of the book value of his stock, (3) payment of all advance dividends due to him, and (4) payment of personal injury and property damage for intentionally inflicting mental anguish on him. Prior to trial, *1104 DWS and DWE dismissed the main demand with prejudice. A trial by jury resulted in the following factual findings: (1) DWS, DWE, Cournoyer and Miller were obligated to buy Tillett's stock at a book value of $130,000; (2) DWS and DWE wrongfully withheld $59,000 in advanced dividends from Tillett; (3) Tillett properly made demand on DWS and DWE to examine corporate records, but DWS, DWE, Cournoyer and Miller in bad faith refused to allow Tillett to inspect the records, and Tillett suffered costs, expenses, attorney fees and damages of $243,000 because of this refusal; and (4) DWS, DWE, Cournoyer and Miller acted in an atrocious, outrageous and utterly intolerable manner toward Tillett which caused him mental anguish damages of $350,000 and no property damages. The trial court rendered a judgment in accordance with these verdicts. DWS, DWE, Cournoyer and Miller filed motions for a new trial, judgment notwithstanding the verdict (JNOV) and remittitur. After a hearing, the trial court partially granted a JNOV and held (1) Cournoyer and Miller were not liable with DWS and DWE to buy Tillett's stock and (2) the liability of DWS, DWE, Cournoyer and Miller to Tillett for intentionally inflicting mental anguish was reduced from $350,000 to $25,000. The motion for a new trial was denied, and, in all other respects, the motion for JNOV was denied. The motion for a remittitur was not acted upon. An amended judgment was rendered in favor of Tillett against DWS and DWE for $189,000 ($130,000 for the value of the DWS and DWE stock and $59,000 for advanced dividends) and in favor of Tillett against DWS, DWE, Cournoyer and Miller for $268,000 ($243,000 for costs, expenses, attorney fees and damages for refusal to permit inspection of corporate records and $25,000 for intentionally inflicting mental anguish). DWS, DWE, Cournoyer and Miller took this suspensive appeal. Tillett answered the appeal asserting the granting of the partial JNOV and the rendering of an amended judgment were error.

FACTS
In 1976, Tillett was employed by Directional Wireline Services, Inc. In 1979, he was promoted to the position of general manager of this corporation. In that capacity, he supervised the daily operations of the corporations. Tillett acquired stock in this corporation and was elected its vice president. Miller served as president of the corporation, and Cournoyer served as secretary-treasurer. This corporation issued fifty-five (55) shares of stock as follows:

(1) Tillett - 10 shares;
(2) Landon Miller - 4½ shares;
(3) Cournoyer - 20¼ shares; and
(4) Miller - 20¼ shares.

In 1980, the original Directional Wireline Services, Inc. reorganized for tax purposes. As part of this reorganization, this original corporation changed its name to Directional Wireline Equipment Co., Inc. (DWE). A new corporation was formed and named Directional Wireline Services, Inc. (DWS). The incorporators of this new corporation were the stockholders of DWE, and each incorporator was given the same number of shares of stock in DWS as he had in DWE. The officers of both corporations were the same, and Tillett was general manager of both.
Article VIII of the Articles of Incorporation of DWE provides as follows:
In the event that any shareholders of this corporation desire to sell any share of stock, he must first offer said stock to the other stockholders at the then existing book value of said stock, and must allow thirty (30) days after making the offer for an acceptance or refusal on the part of the remaining shareholders; the begibning [sic] of the thirty days shall be at the time the written notice is either actually given to the shareholders, or from the time that said written notice has been delivered to their last known address, which is as stated in these Articles of Incorporation, unless otherwise *1105 recorded differently in the books of the said corporation.
Article XI(A) of the Articles of Incorporation of DWS provides as follows:
No stock in this corporation shall be transferred unless the stock shall have been first offered for sale to the corporation, and, if the corporation shall fail or refuse to accept the offer, to each of the other stockholders of this corporation in the proportion of their then existing ownership of stock. The offeree shall have an option to purchase the stock to be transferred at the following price: At the book value determined as of the date the stock shall have been first offered to the corporation. Book value shall be determined by the certified public accountant then employed by this corporation and shall be binding on all parties. The offer shall be in writing and shall set forth the price and terms on which the stock is offered. It shall be sent by registered mail to the President and Secretary of the corporation and to each stockholder at the address listed on the corporation books. The right to transfer stock shall not exist until the corporation and all existing stockholders either refuse in writing the offer so made, or waive the requirement of an offer in writing, or until, they fail for a period of thirty (30) days after receipt of the written offer to accept it by compliance with the terms therein set forth. Regulations as to the formalities and procedures to be followed in effecting the transfer may be prescribed in the by-laws of the corporation.
Tillett's employment by DWE and DWS was terminated on March 31, 1982. By letter dated April 2, 1982, Tillett, with the assistance of legal counsel, tendered his stock in DWE and DWS for sale pursuant to the articles of incorporation of those corporations. By letter dated April 27, 1982, DWE and DWS, through legal counsel, advised Tillett as follows:
My clients acknowledge receipt of your letter of April 2, 1982 and accept the offer of Mr. Tillett to purchase the shares of stock that he owns in both of the aforesaid corporations at book value in accordance with and in conformity to the articles of incorporation of said corporations.
We shall have our CPA firm compute the value of Mr. Tillett's stock and will make this available to you in the immediate future. Please advise Mr. Tillett that my client is willing to work with him in selecting an independent certified public accountant, should he deem it necessary.
By letter dated June 11, 1982, DWE and DWS advised Tillett that the book value of his stock was a "negative figure", however, "in the spirit of compromise", Tillett was offered $50,000 for his stock. Tillett was advised that if he did not "honor his contract to sell his stock as per the prior offer" DWE and DWS were "prepared to commence legal action in order to compel Mr. Tillett to sell his stock as per his offer." Negotiations between the parties thereafter broke down.
DWE and DWS filed the main demand herein on July 16, 1982. Tillett's reconventional demand was filed on July 30, 1982.

NO RIGHT OF ACTION

(Appellants' Assignment of Error Number 8)
The appellants filed in this court a peremptory exception raising the objection of no right of action. La.C.C.P. art. 2163. They assert that while this action was pending in the trial court Tillett filed for personal bankruptcy and was discharged, pursuant to 11 U.S.C. § 541(a)(1), the ownership of Tillett's causes of action are now vested in the trustee in bankruptcy, and the trustee, not Tillett, is the proper party plaintiff in these proceedings.
The objection of no right of action raised in a peremptory exception determines if the plaintiff has a right or legal interest in the subject matter of the suit. The court must decide if the plaintiff belongs to the class of persons to whom the law grants the remedy being sought. McGowan v. Ramey, 484 So.2d 785 (La. App. 1st Cir.1986).
*1106 When the reconventional demand was filed in 1982, Tillett was the proper party plaintiff. The record reflects that in 1983 Tillett (and his wife) filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Louisiana. Apparently, these proceedings were stayed by the Bankruptcy Court. In 1985, counsel for the Tilletts filed a motion with the Bankruptcy Court which requested, among other things, the following:
3.
That your mover desires, and does hereby move this Honorable Court, to vacate all prior stay orders affecting the subject suit and permit your mover to further said suit to a conclusion in state court proceedings in the 32nd Judicial District Court, for the Parish of Terrebonne, State of Louisiana.
4.
That your mover desires that the previous Complaint to Remove Lawsuit from State Court to Bankruptcy Jurisdiction filed in this matter be dismissed, without prejudice, in order to permit your mover to advance the interest of Ray Oswald Tillett, Sr., and Juanita Manuel Tillett in the state court proceeding.
On April 29, 1985, the Bankruptcy Judge issued the following order in response to this motion:

ORDER
Considering the above and foregoing;
IT IS ORDERED by this Court that all stay orders previously issued in this matter and affecting that cause of action entitled, "Directional Wireline Services, Inc., and Directional Wireline Equipment Co., Inc. versus Ray O. Tillett", Docket No. 68,940 of the 32nd Judicial District Court, for the Parish of Terrebonne, State of Louisiana, be and they are hereby vacated;
IT BEING FURTHER ORDERED that Douglas H. Greenburg, attorney for Trustee, on behalf of complainants, Ray Oswald Tillett, Sr. and Juanita Manuel Tillett, be and he is hereby authorized to withdraw the prior request for removal of the subject lawsuit from state court to bankruptcy jurisdiction, without prejudice to all rights and causes of action of all parties to the subject case number 68,940 of the docket of the 32nd Judicial District Court in and for the Parish of Terrebonne, State of Louisiana, entitled, "Directional Wireline Services, Inc., and Directional Wireline Equipment Co., Inc. versus Ray O. Tillett", together with the reconventional demand and all other incidental demands and all other relief prayed for therein.
This case proceeded to judgment pursuant to this Order.
The objection of no right of action is without merit, and the exception is overruled.

FAILURE TO GRANT NEW TRIAL

(Appellants' Assignment of Error Number 7)
Appellants contend the trial court erred by not granting their motion for a new trial. They assert the trial court, in its written reasons for the denial, admitted that the jury's verdict was contrary to the law and evidence but, nevertheless, denied the motion.
The trial court's written reasons provide, in pertinent part, as follows:
Defendants have filed motions for a New Trial, Judgment Notwithstanding the Verdict and alternatively for a remittitur. They alleged that the jury was a "runaway jury", that the verdict is completely contrary to the evidence, etc. The motions were of course opposed by Plaintiff who lauded the jury for its sound judgment.
This Court would propose to consider the verdicts by commenting on each interrogatory in the order in which the jury considered it.
The Court does not believe that Cournoyer and Miller were obligated to buy the stock of Plaintiff. In accordance with the articles of incoporation [sic] of the two corporations, Plaintiff in writing offered his stock in the respective corporations *1107 to those corporations and that offer was apparently accepted. The quarrel was relative to the price to be paid, which question generates most quarrels. Cournoyer and Miller never having contracted with the Plaintiff to buy, according to the evidence, cannot be found by the jury to be obligated to buy. That portion of the judgment will be changed so as to make only DWE and DWS obligated to buy the stock.
The Court will not disturb the jury's finding of fact as to the book value of Plaintiff's stock. They had before them enough evidence to make the determination of fact and they made it. It will not apply to Cournoyer or Miller, infra.

The Court disagrees with the finding of fact that advance dividends had been withheld from Plaintiff. Plaintiff had apparently never before gotten any dividends from these corporations, either advance or otherwise. DWS is and was a Subchapter S corporation operated on a cash basis. It, like all Subchapter S corporations, never paid any corporate tax or any dividends. The profits were divided among the shareholders and were reported by those shareholders on their individual tax returns. This Court does not believe that this jury understood this concept although it was explained to them more than once, but that is why parties request juries. Judges are easily confused by attorneys, but not nearly as easily as jurors are. As erroneous as the Court believes that determination to be, the Court will not disturb that finding of fact or the finding of the quantum dividends withheld.

Whether or not the Plaintiff made statutory demand to examine the records of the two corporations is purely a fact question for the jury. They heard the evidence and made their determination. It is a finding of fact that the Court will not disturb.

The finding that between specific dates that all Defendants refused in bad faith to permit the Plaintiff to exercise his inspection rights is likewise a finding of fact, but one with which the Court feels compelled to point out its disagreement. Plaintiff and his wife owned, by their own admission, a substantial interest in a company competing with DWS and DWE. That interest, by Mr. Tillett's own admission, he attempted to hide by placing the stock in the name of his wife. This Court believes that Tillett was a stockholder in a competitor and that this took him out of the catagory [sic] of the ordinary shareholder contemplated by R.S. 12:103. The Court therefore disagrees strongly with that finding of fact as well as any consequent award made of damages, attorney fees, costs, expenses, etc.

The Court disagrees with the jury's finding of fact that all four Defendants or that any of them acted in a [sic] atrocious, outrageous and utterly intolerable manner toward the Plaintiff. The Defendants and the Plaintiff, subsequent to the termination of Plaintiff by the Defendants and Plaintiff's offer to sell his stock in the two corporations to those corporations, got into a disagreement about the book value of that stock, the figure for which the Plaintiff was obligated to offer his stock to those corporations. There was the usual spate of negotiations, offers and counter offers [sic], followed by this lawsuit, after a short period of these negotiations. Mr. Tillett was discharged on March 30, 1982 and this suit was filed July 16, 1982.
Perhaps the conduct referred to relates to the allegations that Defendants orchestrated Mr. Tillett's financial decline. After the Plaintiff was terminated, his note to a local bank came due and the bank called the note. Mr. Tillett could not pay the six (6) figure note, and the bank seized the property, which is no great surprise, given the proclivity of banks when they are not timely paid. Additionally, Plaintiff had borrowed another $40,000.00 from this same bank for some additional cost overruns on his house, but the bank would only loan the money to the Plaintiff if there was an endorser. Cournoyer, at the request of Mr. Tillett, endorsed the note. After Plaintiff's discharge that note also came *1108 due, was also not paid by Mr. Tillett, and the bank called upon Mr. Cournoyer as the endorser to pay the note. Cournoyer bought the note as he was obligated to do and in turn sued Tillett on the note in a separate lawsuit. Because Cournoyer was a director of the bank involved, Plaintiff alleged a grand scheme on the part of Defendants to ruin him financially. Plaintiff went into bankruptcy subsequent to his discharge.
Evidence at the trial adduced by Plaintiff showed that Cournoyer never talked to anyone at the bank about the Plaintiff or his loan except when he agreed to endorse Plaintiff's $40,000.00 note. The Plaintiff was sued because he had a six (6) figure note and he could not pay it when it came due, an occurrence that happens every day without any connivance on the part of anyone. Plaintiff became insolvent because he spent far more than he made. If the Tilletts wish to confront the cause of their financial misfortune, they have only to stand together and look into a mirror. Mrs. Tillett's behavior after her husband lost his job in getting rid of a new Cadillac, buying a new Lincoln and then trading in the Lincoln on a new Ford convertible can hardly be classified as normal. These people displayed all of the fiscal responsibility of a Democratic Congressman.
The evidence shows that the bank sued Mr. Tillett for the payment of a note that was past due and a note which he had not paid. The record also shows that Mr. Cournoyer sued Mr. Tillett for the $40,000.00 note which represented money that Mr. Tillett had gotten, that Cournoyer had to repay and Cournoyer was trying to get back from Tillett. The record also shows that Cournoyer's motor company sued Tillett in connection with an open account which he owed and which had not been paid. It is interesting to note that Tillett urged no defenses against any of these notes and his reaction to the taking of the various judgments against him was to go into bankruptcy. As noted above, none of these Defendants are responsible for Mr. Tillett's bankruptcy.
While he was employed by them they paid him a substantial salary which grossly exceeded anything that he had ever made before.
The Court quite honestly believes that this jury heard the truly sad tale of Mr. Tillett's decline from a $250,000.00 a year job to bankruptcy and decided to punish his former employers and their major stockholders, Cournoyer and Miller, by awarding to Plaintiff the amount which they calculated he had lost by reason of his failure to pay those notes, the subsequent lawsuits, and his subsequent bankruptcy. The Court believes this award was made to Plaintiff because they did not think Plaintiff should have been fired, or because they did not like the manner in which Plaintiff was fired. Any outrageous, etc. behavior by Defendants that is actionable would have had to occur between the date of Plaintiff's firing and the date of the filing of this lawsuit, because after the filing of the lawsuit, the behavior of the Defendants toward the Plaintiff was subject to the Court's authority. Defendants have certainly defended this action (the reconventional demand) as agressively [sic] as Plaintiff has prosecuted his demand. This is not actionable, but expected.
As preposterous as is the jury's finding of fact relative to the alleged outrageous behavior by the Defendants, the Court will not disturb it simply because it is loath to disturb a finding of fact by the factfinder.
The quantun [sic] of damages awarded for that conduct and behavior which does not include property damage, is however a matter which this Court cannot let remain intact, as by reason of its gross excessiveness, it does grave injustice. The quantum of damages awarded, $350,000.00, is the type of quantum awarded in general damages to a person who is young, has had multiple level back surgery with a bad result, and will be in serious and constant pain for the rest of his life. It is not the quantum of money given to man who by his own fault goes from an exceptionally well *1109 paid job to bankruptcy. Plaintiff's firing did not cause his problems. What happened to Plaintiff would happen to any of us who failed to meet our obligations. Plaintiff's failure to meet his obligations is only the fault of Plaintiff, not of the Defendants. This Court will therefore reduce the award of $350,000.00 to the sum of $25,000.00, which this Court believes is more than adequate.

This Court feels compelled to observe that it believes that this jury was influenced by emotion and attempted to give Plaintiff enough money to cure his financial woes under the guise of "damages". Defendants do not have to continue to support the lifestyle of Plaintiff and his family after his discharge.
. . . .
The reason for the denial of a new trial is that this Court does not believe that any jury, unless possibly composed primarily of professional persons, could understand the various questions involved in this trial, such as Subchapter S corporations, the difference between a cash basis and an accrual basis, what constitutes a business competitor and other factors too numerous to detail. [Emphasis added.]
The peremptory grounds for granting a new trial are set forth in La.C.C.P. art. 1972, which provides, in pertinent part, as follows:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence. [Emphasis added.]
The word "shall" is usually construed as meaning "mandatory." Cf. La.C.Cr.P. art. 5; La.R.S. 1:3; La.C.J.P. art. 4.
The trial court erred as a matter of law in not granting appellants' motion for a new trial. In its reasons for judgment, the trial court found that the jury's verdicts were contrary to the law and evidence. The trial court judge observed the appearance and demeanor of the witnesses and heard all of the evidence along with the jury. After carefully reviewing the record, we cannot say his factual evaluation of the conflicting evidence is clearly wrong. He did not grant the motion for a new trial even though La.C.C.P. art. 1972 requires that he "shall" do so.[2] In David v. David, 347 So.2d 885, 888-889 (La.App. 3rd Cir. 1977), the court observed as follows:
Under art. 1972(1), a judgment clearly contrary to the law and the evidence entitles an aggrieved party to a new trial. An ex parte judgment of possession has, like all other judgments, certain requirements which must be met. LSA-C.C.P. art. 3061. The court under the law must examine the petition for possession and the record of the proceedings to determine that petitioners are entitled to the relief prayed for and that all taxes have been paid. The court "tries" these questions just as if witnesses were called and testimony taken in open court. A judgment not complying with these requirements of law is erroneous, contrary to the law and the evidence, and a new trial is mandated.

. . . .
The failure to grant a new trial here was manifestly erroneous. The judgment of possession is contrary to the law and the evidence. Where substantial justice has not been done and a litigant has been deprived of legal rights, a new trial should be granted. [Emphasis added.]
See also, Dawson v. Mazda Motors of America, Inc., 475 So.2d 372 (La.App. 1st Cir.1985); Burleigh v. State Farm Insurance, 469 So.2d 270 (La.App. 3rd Cir.), writ denied, 474 So.2d 1305 (La.1985).
This assignment of error has merit.[3]

GRANTING OF PARTIAL JNOV

(Tillett's Answer to Appeal)
In his answer to this appeal, Tillett argues that the trial court erred in granting *1110 a partial JNOV to the effect that Cournoyer and Miller were not personally liable with DWS and DWE to buy Tillett's stock in the corporations. A JNOV should be granted when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not reach a different conclusion, not merely when there is a preponderance of evidence for the mover. La.Code Civ.P. art. 1811; Scott v. Hospital Service District No. 1 of Parish of St. Charles, 496 So.2d 270 (La.1986). We agree with the trial court's conclusion that there was no evidence in the record that Cournoyer and Miller ever agreed to personally purchase Tillett's stock. Accordingly, this portion of the JNOV granted by the trial court is affirmed.

DECREE
For the foregoing reasons that portion of the judgment granting a partial JNOV to the effect that Cournoyer and Miller were not personally obligated to purchase Tillett's stock is affirmed. In all other respects, the judgment of the trial court denying appellants' motion for a new trial is reversed and this cause is remanded to the district court for a new trial on the remaining issues. The peremptory exception raising the objection of no right of action filed by the appellants is overruled. The cost of this appeal is assessed 50% to Tillett and 50% to the appellants. All other costs shall be assessed in a final judgment on the merits.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART; EXCEPTION OVERRULED.
NOTES
[1] Ladon Miller also owned stock in the corporations but was not made a party defendant.
[2] A judgment granting a new trial is not appealable. Miller v. Chicago Insurance Company, 320 So.2d 134 (La.1975).
[3] Because we find merit to this assignment of error, it is not necessary to review the six remaining assignments of error of the appellants or the remaining assignments of error in Tillett's answer to the appeal.