463 So.2d 632 (1984)
Joseph M. MATRANGA
v.
SARA MAYO HOSPITAL, Dr. Frederick Wild, et al.
No. CA-2037.
Court of Appeal of Louisiana, Fourth Circuit.
December 10, 1984.
Rehearing Denied February 26, 1985.
Writ Denied April 19, 1985.
*633 Russell J. Schonekas, Tucker & Schonekas, New Orleans, for plaintiff-appellant, Joseph M. Matranga.
J. Mark Graham, Henderson, Hanemann & Morris, P.C., Houma, for defendant-appellee, Argonaut-Southwest Insurance Company.
H. Martin Hunley, Jr., Deborah I. Schroeder, Lemle, Kelleher, Kohlmeyer, Hunley, Moss & Frilot, New Orleans, for defendant-appellee, Dr. Frederick Wild.
Before GULOTTA, KLEES and ARMSTRONG, JJ.
KLEES, Judge.
This appeal arises out of a medical malpractice suit. Joseph M. Matranga, Sr. brought suit for the death of his wife, Jeannette Matranga, against Sara Mayo Hospital, Argonaut-Southwest Insurance Company as the hospital's liability insurer, Dr. Frederick Wild, his professional liability insurer, and an anesthetist and his liability insurer, who were neither named nor served. Prior to trial, Sara Mayo Hospital filed for relief under the bankruptcy laws of the United States and the proceedings against the hospital were stayed. Thereafter, a jury trial proceeded against Argonaut-Southwest Insurance Company and Dr. Wild.
After the presentation of Mr. Matranga's evidence, Argonaut-Southwest Insurance Company and Dr. Wild filed motions for directed verdict. The trial court granted the motions and dismissed Mr. Matranga's suit. Mr. Matranga appeals. We affirm.
The issues presented for determination are as follows:
1) Whether the trial court erred in granting the motions for directed verdict; and
2) Whether the doctrine of Res Ipsa Loquitur applies.
On August 18, 1974, Jeannette Matranga was admitted to Sara Mayo Hospital complaining of abdominal pain which she had been suffering from time to time since an operation for intestinal obstruction performed by Dr. Wild in 1973. On August 21, 1974, she again underwent successful corrective surgery for intestinal obstruction. She was recovered in the recovery room and, in due time, was returned to her room.
After surgery, Mrs. Matranga's temperature increased and her condition deteriorated over the next few days. Fearing peritonitis was the cause of her problems, Dr. Wild decided on Sunday, August 25, 1974, that emergency surgical intervention was necessary to save his patient. After receiving permission to operate, Dr. Wild brought Mrs. Matranga into surgery where he discovered she did, in fact, have peritonitis.
At the conclusion of the second surgery, Mrs. Matranga recovered in the operating room and then returned to her room under the care of a trained intensive care nurse, Margaret Geer. Mrs. Matranga was immediately *634 placed on oxygen from a wall unit in her room as per orders of Dr. Wild. Dr. Wild checked on Mrs. Matranga in her room and finding her in capable hands, he left the hospital for home where he could be reached by telephone. However, before he left the hospital, he called Dr. Edward Hyman, an internist, in consultation to assist with postoperative care.
Sometime after Dr. Wild left the hospital, Mrs. Matranga began having respiratory difficulties. Nurse Geer, Dr. Hyman, an anesthesiologist and other hospital personnel came immediately to her aid. Dr. Wild was called and he came back to the hospital to care for his very sick patient. At some point, Mrs. Matranga was placed on a respirator. Other specialists were called in to help Dr. Wild. Despite all their efforts, Jeannette Matranga died at 3:15 a.m. on August 26, 1974. An autopsy was performed and it was determined that pulmonary edema and other complications associated therewith were the causes of Mrs. Matranga's death.
Mr. Matranga's case consisted of his testimony, the testimony of his son and daughter-in-law, and the cross examination testimony of Dr. Wild with respect to the hospital records and his treatment of Mrs. Matranga. No other surgeons or hospital personnel were called to testify.
At the close of Mr. Matranga's presentation, the trial court, giving lengthy oral reasons, dismissed Mr. Matranga's suit by granting the motions for directed verdict filed by Dr. Wild and Argonaut-Southwest Insurance Company.

DIRECTED VERDICT
The standard to be used in deciding whether a motion for directed verdict should be granted in a jury case has been established by this Court in Ragas v. Argonaut-Southwest Insurance Co., 379 So.2d 822 (La.App. 4th Cir.1980). The Ragas, supra, Court looked to the federal jurisprudence for guidance since the directed verdict was a new procedural mechanism in civil cases in Louisiana, having been added to the Code of Civil Procedure in 1977 by Article 1810, and held
"On motions for directed verdict and for judgment notwithstanding the verdict, the Court should consider all of the evidencenot just that evidence which supports the non-movers case but in the light and with all the reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable' men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.' Boeing Company v. Shipman, 411 F.2d 365, 374 (5th Cir.1969)."
See also, Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir.1979); Lasseigne v. Dauterive, 433 So.2d 334 (La.App. 3rd Cir. 1983); Ragas v. Argonaut-Southwest Insurance Company, supra.
Since Dr. Wild practiced in the specialized area of medicine called surgery, Mr. Matranga had the burden of proving that Dr. Wild either lacked the degree of knowledge or skill ordinarily practiced by other doctors within his own specialty, or that he failed to use reasonable care and diligence, along with his best judgment in the application of his skills as a specialist. Ardoin v. Hartford Accident & Indemnity Company, 360 So.2d 1331 (La.1978); LSA-R.S. 9:2794.
As we apply these principles to the evidence presented by Mr. Matranga, we conclude that the trial court correctly granted the motions for directed verdict.
Specifically as to Dr. Wild, he was the only surgeon who Mr. Matranga called to testify. Dr. Wild stated he had been a board certified surgeon since 1960. He testified that the surgery on August 21, 1974, had some unanticipated problems but *635 Mrs. Matranga came out of the operation in stable condition. Dr. Wild said the surgery on August 25, 1974 proceeded with no problems and he had Mrs. Matranga recovered in the operating room since the recovery room at Sara Mayo was closed on the weekend. He believed that a recovery in the operating room was as good as, if not better, than recovery in a recovery room. Dr. Wild looked in on Mrs. Matranga in her room and, finding her on oxygen and in the capable care of the intensive care Nurse Geer, he left the hospital after consulting with Dr. Hyman. As soon as he was notified of Mrs. Matranga's difficulties, he came back to the hospital to care for this very sick lady. He did everything he could to help Mrs. Matranga but unfortunately to no avail.
Dr. Wild further testified there was nothing in the hospital record indicating that Mrs. Matranga was not receiving everything that was ordered for her. He had no knowledge of any equipment malfunction and there was nothing in the hospital record indicating such a problem. He considered the care given to Mrs. Matranga to be consistent with the kind of care she would have gotten by any reputable surgeon in accordance with the usual standards of care.
After a review of the record, we find that there is no evidence that Dr. Wild deviated from the standards set forth in Ardoin v. Hartford Accident & Indemnity Company, supra.
A plaintiff in a malpractice suit against a hospital has the burden of showing that hospital personnel negligently departed from the recognized standard of care afforded by the hospitals in the area for the particular type of illness involved. The measure of skill, care, and diligence each hospital employee owed the patient is that established by other institutions throughout the area as adequate and acceptable medical care. Garrison v. Hotel Dieu, 319 So.2d 557 (La.App. 4th Cir.1975); Hunt v. Bogalusa Medical Center, 303 So.2d 745 (La.1974); Williams v. Sisters of the Incarnate Word of Galveston, 341 So.2d 1299 (La.App. 3rd Cir.1977).
As to Sara Mayo Hospital, there is no evidence, either in the hospital records or in the testimony of Dr. Wild, that indicates that there were any negligent acts or omissions, as alleged in the petition of Mr. Matranga, which would support a malpractice claim against the hospital. There was only innuendo and speculation on Mr. Matranga's part which was categorically refuted by Dr. Wild.
The facts point strongly in favor of Dr. Wild and Sara Mayo Hospital that reasonable persons could not arrive at a contrary verdict in favor of Mr. Matranga. Having arrived at this conclusion, we find that the trial court correctly granted the motions for directed verdict.

RES IPSA LOQUITUR
The rule applies when the facts shown suggest the negligence of the defendant as the most plausible explanation of the injury. McCann v. Baton Rouge General Hospital, 276 So.2d 259 (La. 1973). See also Boudreaux v. American Insurance Co., 262 La. 721, 264 So.2d 621 (La. 1972); Garrison v. Hotel Dieu, 319 So.2d 557 (La.App. 4th Cir.1975).
The doctrine of Res Ipsa Loquitur is not applicable to malpractice cases involving no more than a failure to obtain satisfactory results from surgery and is limited to untoward or unusual occurrences during the time of medical supervision. McCann v. Baton Rouge General Hospital, supra; Cologna v. Beazley, 445 So.2d 25 (La.App. 4th Cir.1984).
In the case at hand, none of the facts suggest that Dr. Wild's or Sara Mayo Hospital's negligence was the cause of death of Mrs. Matranga. Dr. Wild testified there were several reasons, other than negligence, that could explain the pulmonary edema which led to the death of Mrs. Matranga.
Additionally, there was no evidence presented, other than innuendo, with respect to equipment malfunction, lack of *636 personnel or care, and failure to attend to the needs of Mrs. Matranga.
There was no evidence of any untoward or unusual occurrence, while Mrs. Matranga was in surgery, or out of surgery in recovery, or in her room. Pulmonary edema is a condition, not an injury, arising in this case without any proof of negligence shown on the part of Dr. Wild or Sara Mayo Hospital.
Since there was no other medical evidence presented to the contrary, Dr. Wild's testimony clearly removes the case against Dr. Wild and Sara Mayo Hospital from the realm of the doctrine of Res Ipsa Loquitur.
Accordingly we conclude that the facts and circumstances fully support the trial judge's granting of the motions for directed verdict filed by Dr. Wild and Argonaut-Southwest Insurance Company.
For these reasons, the judgment of the trial court is hereby Affirmed. All costs of Appeal are to be paid by Appellant.
AFFIRMED.