580 So.2d 528 (1991)
Rosemary P. ARMSTRONG and Gerald R. Armstrong, etc.
v.
Michael R. LORINO, Jr., et al.
No. 90-CA-1891.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1991.
*529 Stephen N. Elliott, Lisa C. Winter, Bernard, Cassisa, Saporito & Elliott, Metairie, for General Motors Corp.
Darryl J. Tschirn, Metairie, for Rosemary P. Armstrong and Gerald R. Armstrong, individually and on behalf of their deceased son, Gerald R. Armstrong, II.
Before SCHOTT, C.J., and LOBRANO and WARD, JJ.
WARD, Judge.
Rosemary P. and Gerald R. Armstrong, individually and on behalf of their deceased son, Gerald R. Armstrong, II sued General Motors Corporation under negligence and products liability theories for the death of their son resulting from an intersectional vehicular accident. The case was tried before a jury, and after presentation of its *530 defense, General Motors moved for a directed verdict of no liability. The District Court granted the motion. We affirm.
In the early morning hours of November 1, 1987, Gerald R. Armstrong, II and three friends were returning from a Halloween party in St. Bernard Parish. Armstrong was driving his 1988 Chevrolet Beretta automobile, traveling westbound on La. Hwy. 39. At the same time, Mrs. Donna Lorino was approaching the intersection of Louisiana Highway 39 on Oak Drive. Mrs. Lorino drove through the intersection, failing to heed the stop sign before crossing the highway. The Armstrong vehicle collided broadside with Mrs. Lorino's vehicle, killing both drivers instantly and injuring their passengers.
This accident precipitated numerous lawsuits; however, the only subject of this appeal is Mr. and Mrs. Armstrong's suit against General Motors in which they contend General Motors manufactured a defective vehicle. In particular, the Armstrongs argue that the locking mechanism in the front seat-back in their son's 2-door Beretta failed or malfunctioned. They do not contend that this malfunction caused the automobile collision but rather that because the seat latch failed to hold properly, upon impact the rear seat passenger was thrown forward into the seat in front of him, causing the seat to fold forward enhancing their son's injuries by crushing him between the seat and the steering wheel.
This type of case is often referred to as a "crashworthy" or "second collision" case. In a crashworthiness case a plaintiff does not allege that a defect in the automobile caused the initial collision between the vehicle and another object. Instead, the plaintiff alleges that the injuries were more severe than they would have been had the vehicle been properly designed and manufactured. The term "crashworthiness" denotes the ability of a motor vehicle to protect the passenger from exacerbated injuries after a collision. See Huddell v. Levin, 537 F.2d 726, 735 (3rd Cir.1976).
General Motors denies any liability and maintains that the deceased's injuries resulted from his failure and the failure of his rear passenger to wear a seat belt. The Trial Judge directed a verdict in favor of General Motors because the Armstrongs failed to prove the seat in question was defective or that a defective seat latch was the cause of Gerald Armstrong, II's death.
Mr. and Mrs. Armstrong contend the Trial Court erred by excluding some testimony and exhibits offered as evidence to prove a defect. They also contend that even if the Trial Court was correct, there was sufficient evidence present to permit the case to go to the jury, and that the Trial Court erred in directing a verdict for General Motors.
In order to prevail in their case against General Motors, the Armstrongs were required to prove, first, that the Beretta automobile made by General Motors was "defective", meaning it had a flaw or imperfection which made the car unreasonably dangerous when in normal use; Weber v. Fidelity & Casualty Company of New York, 259 La. 599, 250 So.2d 754 (1971), and second, that their son's injuries were enhanced or made worse by the defect. Huddell, supra.
In an attempt to prove a defect in the seat lock mechanism, the Armstrongs offered the testimony of Eugene Earp, a safety expert from Louisiana State University, and Andre Hebert, the rear seated passenger behind Gerald Armstrong in the vehicle on the night of the accident.
Mr. Earp advised the Court he had 40 years experience in the field of safety and was a safety director at LSU for eleven years. He admitted he was not a mechanical engineer and that he had no experience in designing an automobile seat. He did not consider himself an accident reconstruction expert nor an expert in the field of biomechanics. Mr. Earp testified he had no experience with automobile crash tests. Considering Mr. Earp's experience and expertise, the Court limited his testimony to the field of safety and refused to permit him to express his opinion as to whether the design of the seat was proper and *531 whether it held upon impact of the accident.
Mr. Earp admitted he had never seen the seat latch until the day of trial and that he did not perform any tests on it. Additionally, under cross examination he advised the Court that his opinion was partially based on a misreading of a National Highway Traffic Safety Administration Department of Transportation Standard. Moreover, when presented with the correct reading of the standard, coupled with mathematical calculations in the standard for determining the striking force a seat must withstand, he conceded that the seat was exposed to forces well in excess of that required by those standards. The Trial Court has great discretion in deciding which witnesses are qualified as experts, and the breadth and scope of expert testimony. See La. C.E. Art. 702 Comment (d). In this instance, the Trial Court did not abuse its great discretion.
In addition to their assigning error to the Trial Court's refusal to allow certain testimony from their expert, Mr. Earp, the Armstrongs also argue the Trial Court erred by excluding from the evidence a General Motors' recall notice for the 1984 Cavalier car. The Armstrongs attempted to introduce this recall notice to prove a defect in the seat back inertia locking mechanism of the 1988 Beretta. The trial court excluded the evidence of the recall because the Armstrongs failed to show that the latching mechanism of the recall was the same type of latch as constructed in the Beretta. The General Motor's expert on the issue of identity of the latches, Ms. Worley, clearly stated repeatedly that although the principal of operation of the two types of latches is the same, the latches, nevertheless, are mechanically different. We find no error in the Trial Court's exclusion of the recall notice.
The Armstrongs contend there was another trial error when the Trial Court excluded a picture of a seat locking mechanism photographed by General Motors on a board with the name "Galinski" under the mechanism. The trial court excluded the photo and now, on appeal, the Armstrongs strenuously argue, as they did at trial, that this misidentification casts doubt on whether General Motors actually had in its possession and tested the latch mechanism from the Armstrong's Beretta.
The Court entertained argument from counsel and testimony from Ms. Worley out of the presence of the jury on the proffer. Ms. Worley was employed by General Motors as an expert to examine the locking mechanisms and to give expert testimony. Her qualifications are discussed later herein. Nevertheless, on this issue Ms. Worley explained that the Galinski case is another General Motors matter she is involved with; however, she stated that that case does not involve the failure of a seat locking mechanism. She identified the locking mechanism in the picture as that from the Armstrong vehicle and unhesitatingly admitted the mislabeling. Ms. Worley unequivocally identified the mechanism in the picture and the mechanism introduced in trial as the one she removed from the Armstrong vehicle. General Motors argued in favor of excluding the photo on the basis of C.E. art. 403, maintaining that the picture would merely confuse the jury.
Ms. Worley convincingly explained the mislabeling of the picture and had previously identified the actual seat and locking mechanism introduced into evidence. C.E. Art. 403 gives great discretion to the Trial Judge to exclude even relevant evidence when that evidence may confuse the issues. See Authors' Notes (2). In this instance we cannot say the Trial Court abused that discretion.
Even if the expert testimony was correctly limited and even if the Trial Court did not err in excluding the proffered testimony and exhibits, Mr. and Mrs. Armstrong argue the Trial Court erred by not permitting the case to go to the jury for their verdict.
In support of their contention that the matter should have gone to the jury, the Armstrongs introduced the testimony of Andre Hebert to prove the seat failed. Mr. Hebert told the Court that the impact of *532 the collision hurled him into the front seat and that the front seat collapsed under the impact crushing Gerald Armstrong.
However, General Motors produced the testimony of Emile Ripp, an Emergency Medical Technician with the St. Bernard Parish Sheriff's Department and Louisiana State Police Trooper John T. Harrison, Jr. which contradicted Hebert's reconstruction of the accident.
Emile Ripp stated that when he arrived on the scene the seat back was in an upright position, not folded forward as Hebert recounted. Trooper Harrison's narration of his arrival and findings at the scene of the accident corroborate that of Ripp. Moreover, Trooper Harrison recalled that the paramedics experienced difficulty in removing Hebert from the vehicle because they were unable to move the front seat. Additionally, Ripp's testimony further impeached Hebert's statement that he (Hebert) was able to exit the car under his own power and that he remained conscious the whole time. Ripp told the Court Hebert was in and out of consciousness and that it took three men to remove Hebert from the car on a stretcher.
General Motors' expert, Ms. Karen Worley, testified as an expert witness to prove the locking mechanism locked as it should have and that a failure did not cause or contribute to Armstrong's injuries. Ms. Worley informed the Court she had a bachelor's and master's degrees in mechanical engineering with a thesis concentration in biomechanics. Ms. Worley defined biomechanics as a discipline in the study of organisms in the human body and other bodies and how they react to forces placed on them. Ms. Worley explained the locking mechanism and its purpose in the vehicle. She examined the seat and the vehicle prior to trial and tested the seat after the accident. She testified as to her certainty that the seat locked during the accident and in fact did not cause or exacerbate Armstrong's injuries. She stated that she formed this opinion based on her examination of the very large load (force) mark on the vehicle floor left by the pin in the locking mechanism.
In order for that mark to have appeared and appear at the position it was in the seat back would have needed to be locked at the time that it was loaded from behind, which means it would have locked when the collision began as it should have.
Thus, all the credible expert testimony refuted allegations that the locking mechanism was defective.
General Motors also called as a witness, the coroner, Dr. Gerald Liuzza a forensic pathologist, who performed the autopsy on Gerald Armstrong. The doctor graphically detailed for the Court the fatal injuries to Armstrong's heart as a result of the sudden deceleration of his vehicle which caused the heart to move forward onto fractured ribs:
... These injuries are caused by what I refer to as deceleration. It's opposite of acceleration, continually decreasing speed. A rapid slowing down in the case of automobile accidents, a characteristic pattern of injuries occurs to the heart and blood vessels attached to the heart, when the automobile in which the individual is riding comes to a very rapid stop. In this case, as you know, if a car is moving forward at a given rate of speed and comes to a stop very suddenly, the objects inside will continue to move forward until stopped by a seat belt, dashboard, and other.
What people don't realize is objects, organs inside the body are also moving. The heart isn't plastered down, so to speak, so, it can't move. Itself (sic.) fairly mobile. It moves around when the heart beats. When an individual is moving at a fast rate of speed stops suddenly, the heart will move forward, and this moving forward resulting in tearing or stretching. Where it tears from when it leaves  it attaches to the back part of the chest and that it where the vena cava comes in. I think the deceleration is responsible for the tear. (Tr. Vol. 5 pp. 220-221).
Dr. Liuzza testified he believed that Armstrong's facial lacerations as well as his fractured ribs were impact induced, not *533 caused by a crushing or squeezing force. Thus, even if the latch was defective, the injuries were neither caused by nor exacerbated by the alleged defect.
In granting a motion for a directed verdict, the court considers all evidence presented in a manner most favorable to the party opposed to the motion. If the court believes the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable men could not reach a contrary verdict, granting of the motion is proper. However, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded men exercising impartial judgment might reach different conclusions, the motion should be denied and the case submitted to the jury. Matranga v. Sara Mayo Hospital, 463 So.2d 632 (La.App. 4 Cir.1984), writ denied, 467 So.2d 540 (La.1985). Applying the foregoing precept to this case, we conclude the trial judge did not err in directing a verdict in favor of General Motors.
AFFIRMED.